## TAYLOR v. BOARD OF COMMISSIONERS OF BIG HORN COUNTY.

COUNTIES—OFFICE AND OFFICERS—PUBLIC OFFICER, COMPENSATION AND EXPENSES—NEW COUNTIES.

1. The relation between an officer and the public is not a creature of contract, and the right of the officer to compensation for services performed is not the creature of contract.

2. Unless compensation is by law attached to a public office, none can be recovered. In such case the services are deemed to be gratuitous, and nothing can be recovered on ground of an implied contract.

3. Commissioners appointed by the Governor to organize a new county, and their clerk, are public officers.

4. Commissioners appointed by the Governor to organize a new county are not County Commissioners, and their clerk is not the County Clerk within the meaning of the statute relating to such officers and providing compensation therefor.

5. Commissioners appointed by the Governor to organize a new county, and their clerk, are not respectively entitled to the salary and compensation provided by law for the offices of County Commissioner and County Clerk.

6. There being no statute providing for compensation for the services of commissioners appointed by the Governor to organize a new county, and for the services of their clerk, such commissioners and clerk are not entitled to compensation.

7. Such officers are, however, entitled to reimbursement by the county for their expenditures for supplies required in the discharge of their duties.

8. Such officers are also entitled to recover from the county their actual and proper expenses in going to and from

their meetings and attending the same; and the same may be settled upon a reasonable mileage and per diem basis.

9. Commissioners appointed by the Governor to organize a county, and their clerk, are authorized to procure the requisite books and other supplies to conduct the election required by law, on the credit of the county, at a reasonable expense; and the procurement of books for the clerk's record, stationery and postage stamps for correspondence is necessary, and the expense incurred therein is a proper charge upon the county.

[Decided December 9, 1902.]                    (70 Pac., 835.)

Reserved questions from the District Court, Big Horn County, Hon. Joseph L. Stotts, Judge.

Action against the Board of the County Commissioners of the County of Big Horn by William E. Taylor, clerk of the commissioners appointed to organize said county, to recover compensation for his services as such clerk, and certain expenditures made by him in procuring supplies for the conduct of his office. The facts are stated in the opinion.

*Gustave E. A. Moeller* and *Parmalee & Hill,* for plaintiffs.

It is contended by the plaintiffs that Lampman is entitled to the salary and per diem of a county commissioner, as provided by Section 1072, Revised Statutes, and that Taylor is entitled to the salary of a County Clerk of a county of the fourth class, which Big Horn County was, as provided by Section 1138, Revised Statutes.

The salary is an incident to the office, and the right to receive the compensation attached to an office accrues to the incumbent as a matter of course. (Ward v. Marshal, 96 Cal., 155; 31 Am. St., 198; 19 Ency. of Law, 525, and cases.) This proposition is plain, and will scarcely need elucidation. The argument of the defendants will rest rather, we imagine, upon the contention that these plaintiffs were not, in contemplation of law, county officers, and, there-

fore, not entitled to the compensation provided for such. It is asserted that the law under which Lampman was appointed commissioner, and Taylor clerk, provides no salary, and that, therefore, none can be implied. It is true that no compensation is provided for under the exact statute by virtue of which these officers were appointed, but it is equally true that the salary of County Clerks in organized counties is regulated by an entirely different statute from that providing for their election.

It is manifest from this that the real question to be considered is, whether Lampman was a County Commissioner and Taylor a County Clerk of Big Horn County, for if they were they are entitled to the salary appertaining to those offices. It is objected at the outset by the defendants that they could not have been officers of the County of Big Horn, for the county was not then organized. The premise is true, but the conclusion does not follow. While Big Horn County was unorganized during the period from March 12, 1890, to January 4, 1897, it was nevertheless a county formed, created and actually existing for all purposes except judicial, revenue and election purposes, and representation in the Legislature. (Session Laws 1890, Chap. 48, Secs. 4, 5; Commissioners of Fremont County v. Perkins, 5 Wyo., 166, 177.)

It is true these officers were appointed by the Governor, but they do not thereby become state officers. Their functions are limited to the administration of county affairs. They were "electors, residing within the county," and their services were rendered to the county. A public officer is one upon whom devolve by law the exercise of certain governmental functions. If these functions are those of state government, such officer is a state officer; if of a county, a county officer. In view of the purposes for which these persons were appointed, and the duties imposed on them by statute, it would be straining both the spirit and the letter of the law to contend that they were not county officers. Seemingly, the only quetison remaining is, whether they

were such county officers as are designated by general law to receive a salary—in short, was Lampman a County Commissioner, and was Taylor a County Clerk?

For the determination of this quetsion, we must, of course, look to the statute. The law under which these officers were appointed speaks of "commissioners to organize such county," and thereafter refers to them as "such commissioners," or "the commissioners," but never as "County Commissioners." It also provides for the appointment of a "clerk," and afterward refers to him as "such clerk," "said clerk," or "the clerk," but does not specifically name him as "County Clerk." Half of the plaintiffs' contention would seem to be established by the terms of the statute, but it will no doubt be argued in respect to the other half, that because the statute does not expressly say *County* Commissioner, and *County* Clerk, the officers appointed to organize the county are not such officers, and not entitled to the compensation provided for the same. To bear out this argument, it should be true that, in speaking of the commissioners of a county, the law should uniformly refer to them as *County* Commissioners. But the contrary is the fact. Chapter 7, Title 10, Division 1, Revised Statutes, which contains the law in relation to commissioners, refers with seeming indifference to "County Commissioners," and "commissioners." In that chapter we read of the "Board of County Commissioners," and also of the "Board of Commissioners." If the chapter on County Clerks is more specific and repeats both words each time, there is a special reason for that use, in that there are, in organized counties, two officers known as "clerk," the County Clerk and the Clerk of the District Court. To prevent confusion, the clerk is generally designated in the statutes "County Clerk," when the official is meant.

But in the case of unorganized counties no such reason exists, as there is no clerk of court provided for, and hence "clerk" is a sufficient title.

What the officer really is must be determined by the

duties to be performed by such officer. The makers of our
constitution foresaw that some Legislature might seek to
avoid the provisions of the constitution in regard to the
compensation of officers, by changing the title of the office.
The constitution has, therefore, effectually prevented such
injustice by requiring the test as to an officer's compensa-
tion to be the nature of the work performed by him, and not
the title by which his office may happen to be designated.
(Art. 14, Sec. 5.)

The nature of these services is indicated by the statute
in two ways: first, by the specific duties prescribed, and,
second, by the oath required of the officers. The law pro-
viding for the organization of counties and the appointment
of commissioners and clerk, specifies certain duties to be
performed by these officers. (R. S., Sec. 1009.) These
duties provided by this section are the same, or analogous,
*mutatis mutandis,* with the duties imposed by law upon
commissioners and clerks, respectively, of organized coun-
ties, as far as the same relate to the conduct of elections.
But another index of what the law expected and required
of the officers appointed under the provisions of this chap-
ter is found in the requirement that, in qualifying, the of-
ficers must take the oaths required respectively of County
Commissioners and County Clerks. The oath thus required
to be taken is to the effect, among other things, that the
person will discharge the duties of his office with fidelity.
(R. S., Secs. 1056, 1136, 1223; Constitution, Art. 6, Sec. 8.)

It is a familiar principle of construction that effect must
be given to every part of a statute, if possible. It is not to
be presumed that the Legislature indulged in a meaningless
formula in requiring Mr. Lampman to take the oath of a
County Commissioner, and Mr. Taylor that of a County
Clerk. When Mr. Taylor made oath that he would per-
form the duties of County Clerk with impartiality, it is not
to be presumed that this was a jejune and farcical ceremony.
If the argument should be advanced that this meant simply
that he would perform the duties required by the chapter

providing for his appointment, a sufficient answer is found in the law itself, which provides a special oath in regard to the faithful performance of the duties required by that statute. This oath sufficiently covered such duties as might not be embraced in the oath of County Clerk. In prescribing both oaths, the Legislature must be presumed to have intended something. That intention must have been that the officer swearing that he would perform the duties of County Clerk, should in fact so perform them.

Big Horn County after its creation and until the appointment of provisional officers was a county for all purposes except judicial, revenue and election, and legislative representation. But now the county was conducting its own election, and was electing its own representatives in the Legislature. Hence at the time these officers rendered their services the county may be said to have existed for all except judicial and revenue purposes. There are other functions and duties of County Commissioners and County Clerks, aside from those connected with the judiciary and revenue. Exactly what these duties are in an unorganized county, it is aside from the question to inquire, as it is admitted that Messrs. Lampman and Taylor performed them all. That they were not inconsiderable may readily be inferred when one stops to think of the entire lack of county machinery and precedent, and that they were required to set in motion the whole affair. (See Keating v. Marble, 18 Pac., 189 (Kan.).

It is here contended that during the period covered by their bills Taylor was County Clerk, and Lampman was actually County Commissioner of the County of Big Horn. But whether or not this is strictly the case, and whether or not the exact legal titles above mentioned were in strictness applicable to these officers, it is nevertheless true that they were discharging the duties of those offices, and were the legal and rightful incumbents of the same, and hence were entitled to the salary belonging thereto. (State ex rel. v. La Grave, 35 L. R. A., 233; People v. Hopkins, 55 N. Y., 74; Chadwick v. Erhart, 11 Ore., 389.)

In regard to the fourth question submitted to this court for answer, very little need be said. It would seem that there can be no question of the liability of Big Horn County to pay for election supplies, postage and other items of expense properly and necessarily expended by the clerk in and about the discharge of the duties of his office. The law made it his duty to supply certain articles. It could never have contemplated imposing this expense upon the clerk. The expenses incurred in and about the organization of the county are properly county expense, and should be paid by the county as soon as it has the power to do so.

The fifth question involves one other point which it is claimed is involved in the case of Lampman. The defendants claim that by the acceptance of the warrant drawn by the county for the payment of per diem and mileage, Lampman must, under the provisions of Revised Statutes, Section 1216, be held to have accepted the same in full payment and satisfaction of his whole bill. The statute does not, however, read that way. It provides for the satisfaction in that way of the "claim to pay which the warrant was issued." The warrant was issued to pay the claim for per diem and mileage, but was not issued to pay the claim for salary. Indeed, the claim for salary was expressly rejected and disallowed, thus effectively showing that the warrant was not issued for such claim, or any part of it.

The object of the statute is undoubtedly to oblige the whole of any claim to be adjusted and litigated in the same tribunal. It particularly applies to such matters as may properly be the subject of adjustment by the Board of Commissioners, and when in the exercise of a discretion which has been conferred upon them, they have allowed such portion of the claim as seems to them just, it is perfectly proper that the claimant should be required to accept their judgment as a whole, or to litigate the whole question. That state of affairs does not exist in this case. In passing upon the salary of a county officer and allowing his claim, the commissioners have no discretion. They act minis-

terially. (State v. Roderick (Neb.), 41 N. W., 404.) It is their duty to allow the salary prescribed by law—no more and no less. Any attempted compromise would be entirely foreign from their duties, and would be void, and of no binding effect, either upon the county or the officer receiving the same.

Much less would a public officer be prejudiced as to his salary, the payment of which the law enjoins; by the mere fact that in the same bill presented to the commissioners there was included a claim based upon other distinct considerations, which was allowed. It seems that in the case of an officer's salary which the law requires to be paid at a certain rate, the allowance by the commissioners of the claim at half the rate of salary fixed by law, ought not estop such officer from claiming and recovering the balance, even though he had received and cashed the warrant for the partial payment.

*Winfield S. Collins, W. E. Clapham* and *M. B. Camplin,* for defendant.

The questions before this court are nothing more, and not anything less, than those which have been reserved and certified to it by the Honorable District Court of Big Horn County.

Beginning upon the first proposition, as to whether a clerk of the organization commission of a county is entitled to any compensation from the county for his services, presumably is meant the county thereafter to be organized. Limited thus, to the county thereafter to be organized, our answer is, No, and our argument in support of the answer is, for the simple reason, that none has been provided. No compensation is contemplated in the act itself, whereby his appointment was made possible, for the reason that none was therein provided, and no other law has provided any compensation, either fees or salary for him. This also applies to the organization commissioner, Lampman.

The statute which creates such organization commission

and empowers it to appoint a clerk, defines their qualifications to serve as such, and prescribes their duties, fails to make any provision for the payment for such services. Knowing this, the plaintiffs accepted their respective trusts, and discharged the obligations thereof. The presumption of the law is that when a duty is enjoined upon a public officer, and no compensation therefor is provided by statute, such services are intended to be gratuitous. (Jones v. County Commissioners, Lucas County; 63 Am. St., 710, and cases.)

There are many officers in the state, district, county and precinct, provided for by statute, and whose duties are required and prescribed, and whose service is for the benefit of the public, where no provision of payment is made for such service. The principle of gratuitous service by organization officers, seems to be contemplated throughout the statute in the organization of all municipal bodies in the state, county, town and school districts. And, what is more, there are many instances where regularly elected officers for long terms, with onerous duties, required and prescribed, and who handle a large amount of funds—required to give bonds, etc.—notably school officers, who do not and cannot draw any compensation for their services, for the same reason urged against the plaintiffs in this case, namely, because none is provided by statute therefor.

As we take it, the source which impelled the plaintiff Taylor to claim the salary of a County Clerk of an organized county, and of plaintiff Lampman to claim the salary for a County Commissioner of an organized county in the State, was because of the requirement of an additional oath—that required of a County Clerk and that required of a County Commissioner, respectively; and the "performance of all and singular the duties preparatory to, respecting or incident to; such election, which are imposed by law upon County Commissioners and County Clerks, respectively, in organized counties."

From these very requirements, we find from the act itself that the organization commissioner is not and was not con-

sidered a "County Commissioner," and that their clerk is not and was not considered a "County Clerk." Reference to the statute shows that many officers are required to take the oath of county officers, but it does not follow that, because thereof, such a person is entitled to the salary of a county officer. The said law also clearly distinguishes between the "commissioners" appointed by the Governor and a "County Commissioner," and the "clerk" appointed by the organization commissioners and a "County Clerk," and hence the said commissioners so appointed by the Governor to organize said county are not "County Commissioners," and their clerk is not a "County Clerk," within the meaning of the statute, but, on the contrary, are virtually but officers to conduct an election, that the county might become organized and county officers become possible. Therefore, if such a commissioner is not a "County Commissioner," he is not entitled to the salary of a "County Commissioner;" and if such a clerk is not a "County Clerk," he is not entitled to the salary of a "County Clerk," as the law authorizing the payment of a salary to a "County Clerk" specifies a "County Clerk," and the law authorizing the payment of a salary to a "County Commissioner" specifies a "County Commissioner." We, therefore, maintain that, as the statute is silent upon the payment therefor, no compensation can be had for the service of the commissioners appointed by the Governor to hold such an election, canvas the returns and approve bonds of the "County Commissioners" elected. And this applies with equal force to the clerk of the organization commission, and that such services were intended to be gratuitous.

As to the advances made by the clerk of said commission, there is no law to authorize or pay the same any more than the advances or expenditures which preceded them in the initiative and inception of the steps taken to organize the said county, and, therefore, for the lack thereof, it must go the way of the rest.

Had the Legislature in said act of Chapter 59, Session

Laws of 1895, expressly "fixed the compensation of said organization commission at the same as now allowed 'county officers,'" and so with the clerk of the commission, at the same as allowed by law for "County Clerks" in organized counties in the State, we believe it would be a matter of serious doubt as to the constitutionality even of such a provision, because "not in proportion to the value of the services rendered and the duties performed." (Sec. 1, Art. 14, Constitution.)

By reference to the required duties of the organization commission and its clerk, it will be seen that only a very small portion of the duties of a "County Commissioner" and a very small portion of the duties of a "County Clerk" is required of these organization officers, namely: The duties of holding an election and matters incident thereto, only perhaps less than a one-hundredth part, and hence do not perform the *usual duties* of such regular officers, only in one isolated instance.

In the same article and section of the constitution it is further provided: "The Legislature shall from time to time fix the amount of salaries as are not already fixed by this constitution." Yet, the Legislature has not fixed any salary or fee, or other compensation, to the office in question, or for the service so performed "in proportion to the value thereof, or duty performed," or otherwise or at all, and hence the answer to question No. 1 must necessarily be in the negative. No "fixed and definite" salary has been made. The court say the salary of all officers must be fixed and definite. (Board of County Commissioners v. Burns, 3 Wyo., 705.)

It is the well settled law that "salary or fee" cannot be claimed or allowed on an implication. To authorize payment from public funds of salary or fee there must be express statute therefor. (Jones v. Co. Com., 63 Am. St., 714.)

The office of a County Commissioner and County Clerk exist only in organized counties in this State; the law pro-

viding for the payment of salaries to County Commissioners and County Clerks in this State applies only to elective or appointive officers of an organized county, and who even cannot fill either, or draw the salary incident thereto, or which is attached thereto, without first qualifying as prescribed by law, in taking the oath of office and of filing their bonds, and performing all requirements of the statute in such respect, and unless the same be so done the office becomes vacant.

The same contractual relation does not exist between one who does service for a municipal corporation as exists between private persons. In the latter, if there be no express agreement as to compensation, still the employed would be entitled to receive a reasonable amount for his labor actually performed, while in the former express statutory authority regulates entirely the disbursement of the public funds. So there is no foundation of law even for invoking the principle of *quantum meruit* in these cases. Taylor was a resident of Johnson County, and was conducting his business there, and Lampman of Sheridan County, during the period for which salary is claimed, but both within the lines of the territory to constitute Big Horn County. Sheridan County had its full quota of commissioners and Johnson County had its County Clerk, at Buffalo, the county seat, during all the said period. The statute providing that the County Clerk shall keep his office at the county seat (Sec. 1222). All of the territory embraced in the lines of Big Horn County was under the jurisdiction of the Counties of Fremont, Johnson and Sheridan, for all purposes, except only for "election purposes," until the 4th of January, 1897, the time of its organization. All such territory being segregated only for the purposes of election. (Sec. 1012, R. S.)

And not until after such election and on the first Monday of January next following, or as soon thereafter as may be possible, the county and precinct officers elected in such county shall respectively qualify and enter upon their respective duties, as provided by law, and when the majority

of County Commissioners so elected shall have qualified and entered upon their duties, such county shall be deemed and held to be organized and shall be vested with all the powers of an organized county under the laws of this State. (See Sec. 1010, R. S.)

Section 1011, Revised Statutes 1899, provides that: "The commissioners appointed by the Governor shall approve the bonds of the County Commissioners elected at such first election." From this we learn that three controlling events must occur, namely: The election of county officers, the approval of the bonds of the County Commissioners and the qualifying according to law, and entering upon their duties of a majority of the County Commissioners so elected, before such county shall be deemed and held to be organized or shall be vested with the powers of an organized county under the laws of this State.

When these events shall have taken place, it is then, and not until then, that the old counties lose jurisdiction over the territory within the lines of the new county or the new county acquires such jurisdiction, and then, and not until then, is the new county born for county government. Then, and not until then, can the new county assume the enumerated powers given by law to organized counties in this State. (Sec. 1073, R. S.)

And, furthermore, it is then, and not until then, that the Board of County Commissioners of the new county shall or can exercise any powers under Section 1058 of the Revised Statutes.

It was not until then, and after the termination of the period of service sued for, that Big Horn County could enter into or make any contracts, expressed or implied, sue or be sued, or could exercise any powers for any purpose whatever. It certainly then must be that everything performed from the inception up until the organization of Big Horn County is, in contemplation of the statute, to be gratuitous, and especially in the absence of a statute expressly providing for such compensation.

The Legislature, in its provisions for organizing new counties, has expressly provided by law for what shall be fastened upon the new county. This, and this only, then is the extent of the liability of the new county. Section 1013, Revised Statutes 1899, provides: "Any county or counties which may be formed out of or detached from any other county or counties shall be held liable for the payment of a just and equitable proportion of the indebtedness of said county or counties, from which said newly organized county was formed, existing at the time of the organization of said newly organized county or counties."

Sections 1014, 1015, 1016, 1017 and 1018 provide for the method of ascertaining such indebtedness, and apportionment and the manner of payment thereof.

We do not deny but what Big Horn County was a "formed" county long prior to July 6th, 1896, but nevertheless assert that it was not an organized county until January 4th, 1897; that, prior to its organization, it was a county merely in name, and only became segregated from the mother counties for "election purposes" up to the 4th of January, 1897, the time of its organization, the termination of the period for which salary is demanded. (Sec. 1012, R. S.) The new county was without right to revenue during this period; it was wholly without funds and equally without right to receive any. And neither plaintiff could have received or disbursed any funds "as a county officer," because wholly without right, power or authority so to do. No official function could be performed by either, except in relation to elections, a duty which the Legislature had a right to prescribe, and yet omitted to prescribe any compensation therefor; it had the same right to require the additional oath as it did the first oath. The jurisdiction of the mother counties extended over the territory embraced in Big Horn County until January 4, 1897. (20 Amer. S. Rep., 680; Clark v. Goss, 12 Tex., 395; 62 Amer. Dec., 531; O'Shay v. Toohig, 9 Tex., 336; People v. McGuire, 32 Cal., 140; R. S. Wyo., 1012; Limon Co. v.

State, 9 S. D., 413; 69 N. W. Rep., Col.; *In re* Fremont Co., 54 Pac., 1073.)

If the board of the organized county has any power to even pay a reasonable compensation for the services sued for it would derive it from Section 1058, Revised Statutes, as "an expense of the county" or "an account chargeable against the county," but, query, how can such service be considered "an expense" of the organized County of Big Horn, or how it could be considered "an expense" chargeable against the county for things occurring before organization bringing power, without express provision of the law? (Board v. Barnes, 24 N. E. Rep., 137.)

It is well settled that officers cannot be paid out of the public treasury without warrant therefor. (Lehigh Co. v. Semmel, 124 Pa. St., 358; 16 Atl. Rep., 876; Wayne Co. v. Waller, 90 Pa. St., 99; Irvin v. Commissioner, 1 Serg. & R., 505; Koontz v. Franklin Co., 76 Pa. St., 154; Libbey v. County of Anoka, 38 Minn., 448; 38 N. W. Rep., 205.)

If a county is not given power to fix the fees of public officers by statute, it can possess no such power. (Board v. Baker, 6 Wyo., 389; 57 Ohio S., 189; 17 Amer. Dec., 257.)

A County Commissioner, where compensation is not specifically provided, is not entitled to any remuneration for services rendered the county except per diem and mileage, as fixed by statute. (Andrews v. Pratt, 44 Cal., 309; Howes v. Abbott, 78 Cal., 270; Cook Co. v. Wrenn, 43 Ill. App., 388; Richmond Co. v. Ellis, 59 N. Y., 620.)

Counties and county boards exercise only such powers as are expressly conferred upon them by statute, and such grant of powers must be strictly construed. (Norton v. Carlin, 51 Neb., 202; 70 N. W., 966; 48 Pac. Rep., 1064; 36 Amer. S. Rep., 438.)

Boards of County Commissioners are not a law unto themselves, but must be guided by and obey the provisions of the statutes relating to the allowance of claims against

the county. (Ellis v. Bingham Co., 60 Pac. Rep., 80.) It is not for the County Commissioners or counties to go beyond the statute. (Com. v. Chaplin, 5 Wyo., 81.)

It is true the board cannot lawfully allow any claim not authorized by law. (*In re* Fremont Co. et. al., 54 Pac. R., 1082.) Public officers have no power except that given by statute. (2 Wyo., 262.) No implied power. (Co. Com. v. Boswell, 1 Wyo., 299; 63 Amer. S., 711; 19 N. W., 415; 9 Nev., 79; 15 N. W., 39; 6 Nev., 104; 7 N. W., 68; 6 Wyo., 404.)

As to the last proposition contained in reserved question No. 5, Section 1216, Revised Statutes 1899, provides: "The person or persons to whom such last named orders shall be allowed and delivered shall be held to have accepted the same in full payment and satisfaction of the claim to pay which the same was issued." (Jay Co. Com. v. Fertich, 10 Ind. App., 1; 46 N. E., 699; Lee v. Coms. of Huntington Co., 24 N. W., 986; *In re* Fremont Co., 54 Pac., 1073.) Salary does not arise above the dignity of other claims. (G. I. & N. Wyo. R. v. Baker, 6 Wyo., 388.)

POTTER, CHIEF JUSTICE.

The plaintiff brought this suit to recover from the County of Big Horn the sum of $604.62, the same being claimed to be due him for services rendered by him as clerk of the commissioners appointed by the Governor, to organize said county. The sum of $593.33 is claimed on account of services, and the sum of $11.29 for money paid out in the purchase of certain election supplies, and supplies required in the performance of his duties. The charge made for services is based upon the salary provided by law for County Clerks of a county of the class within which Big Horn County belonged.

It is alleged in the petition that on the 6th day of July, 1896, the plaintiff was duly appointed as clerk aforesaid, and that he served in that capacity for a period of five months and twenty-eight days, until and including the 4th

day of January, 1897. The answer contains a general denial, and as a separate defense an averment that there is no law giving the Board of County Commissioners of the county the power to allow or pay the demand. A stipulation as to the facts, and submitting the cause, was entered into as follows:

"1.   That prior to July 6th, 1896, the Governor of the State of Wyoming appointed A. L. Coleman, S. A. Lampman and Lou Blakesley, commissioners to organize the County of Big Horn in the State of Wyoming under the provisions of Chapter 59, Session Laws of the said State of 1895, and said three named commissioners qualified as such, and on July 7th appointed plaintiff as their clerk, as provided by Section 1007, Revised Statutes of Wyoming, who duly qualified as such and served in that capacity from said 7th day of July, 1896, to January 4th, 1897, and in doing so performed all the duties required by law.

"The plaintiff during the time named, namely, between July 7th, 1896, and January 4th, 1897, paid express on election supplies shipped to Billings, $2; postage at various times, as follows, $.25, $.97, $.50, $.70, $.30, $1.00; total, $3.72; 6 locks and one dozen butts for ballot boxes, $2.10; paper, envelopes and postage, $1.18; paid mail carrier for delivery of election supplies, $.75; election supplies purchased of Johnson County, $1.10; express on election supplies, $.45, total $11.30, all of which were incurred in and about the business of his said office.

"2.   That on January 3, 1897, after the organization of Big Horn County was completed, the plaintiff filed a bill to the Board of County Commissioners of Big Horn County for compensation for the services and expenditures as above stated, aggregating the sum of $604.62; that the said board disallowed said claim, and the plaintiff has never received any compensation whatever for his claims. It is stipulated that the case is submitted on the above and foregoing facts and the pleadings in the case. It is understood, however, that in case further testimony be required in furtherance of

justice on any ruling of the court on trial, the above stipulation shall not prevent the introduction of such testimony as may be proper."

Thereupon the district court reserved the following questions for the decision of this court:

1. Is a clerk appointed under the provisions of Section 1007 of the Revised Statutes of 1899, who duly qualifies and serves as provided by the terms of Chapter 3, Title 10, Division 1, Revised Statutes of 1899, entitled to any compensation from the county for his services?

2. If so, is he entitled to receive the salary provided by law for County Clerks?

3. If entitled to any compensation, what is the rule governing the measure of the same?

4. Is such officer entitled to recover for supplies furnished and expenses incurred in and about the discharge of the duties of his office?

5. When an officer presents a bill to the county for salary, per diem and mileage, and the Board of County Commissioners disallows the claim for salary, but allows the amount claimed for per diem and mileage, which the officer received and accepts, is such officer thereby precluded and estopped from bringing suit for his salary?

The fifth question is not applicable to the case brought by plaintiff, Taylor, and is evidently included as bearing upon another case brought by S. A. Lampman to recover salary as one of the commissioners appointed and serving in organizing the said county; his claim being for salary based upon the amount of salary provided by law for County Commissioners of duly organized counties. It appears that the Lampman case is held awaiting a decision in the Taylor case; and the papers have been sent to this court, but no separate reservation of questions was made in the case. Counsel, however, have treated the matter as though both cases are here upon the questions reserved in the Taylor case; and as the question as to the right to salary is similar in both cases, we perceive no great impropriety in discussing

it as applicable to both, especially since the order entered in the Lampman case in the trial court recites that "certain questions involved herein shall be reserved to the Supreme Court, and judgment rendered in accordance with the answers received from said Supreme Court to said questions, which said questions shall be reserved and certified in said case of Taylor v. the Board of County Commissioners."

It is well settled that the relation between an officer and the public is not a creature of contract. So his right to compensation for services performed is not the creature of contract. If it exists at all, it is the creation of law. Unless, therefore, compensation is by law attached to the office, none can be recovered. The services are, in such cases, deemed to be gratuitous, and the officer cannot recover anything on the ground of an implied contract to pay what the services are reasonably worth. (Mechem on Pub. Off., 855-6; Throop on Pub. Off., 446-7; Crofut v. Brandt, 58 N. Y., 106; 17 Am. Rep., 213; Haswell v. Mayor, &c, 81 N. Y., 255; Locke v. Central City, 4 Colo., 65; Hadley v. Supervisors, 28 How. Prac., 22; Boyden v. Brookline, 8 Vt., 284; Axen v. Meserve (Neb.), 78 N. W., 721; State v. Brewer, 59 Ala., 130.)

Commissioners appointed by the Governor to organize a new county and their clerk are public officers. The commissioners are appointed by the Governor by virtue of a statute. The clerk is appointed by the commissioners by virtue of the same statute. They are required to qualify by taking an oath, and their positions are designated as offices by the statute. The duties enjoined are public duties. (Mechem on Pub. Off., 1-9.) The statute providing for their appointment and prescribing their duties fails to make provision for their compensation; and there is no other statutory authority for compensating them for their services unless they are held to be respectively County Commissioners and County Clerk. The contention on behalf of the plaintiff in each case is that they were county officials,

and as such entitled to the salary and compensation fixed by statute for those offices. But we think they were not respectively a County Commissioner and County Clerk. The offices they held are not so referred to or designated in the statute. Neither does the statute clothe commissioners to organize a county with many of the powers of County Commissioners—such as to erect and keep in repair county buildings; to allow accounts chargeable against the county, and issue county orders therefor; to levy taxes, lay out roads, etc. They are indeed designated as commissioners to organize the county. There was no county organization until their duties had all been fulfilled. Their duties are confined to meet and appoint a clerk, and designate a place "for the transaction of their official duties;" and to "perform all and singular the duties preparatory to, respecting or incident to" the holding of an election in the county at the next general election, held in the State, which are imposed by law upon County Commissioners, and to canvass the returns of such election; at which election the county and precinct officers provided by law are required to be chosen; and the electors of the county cast their ballots for Congressman and members of the State Senate and House of Representatives. Upon the clerk appointed by such commissioners is imposed the duty of performing the duties in respect to such election as usually falls upon County Clerks. The unorganized county, for the purpose of such election, is declared to be segregated from the original county or counties from which the same is taken; and it is to become an organized county on the first Monday of January following the election, or as soon thereafter as a majority of the County Commissioners-elect shall have qualified. (R. S., Secs. 1002-1012.) It is true that they are required by the terms of the statute not only to take an oath to faithfully and impartially discharge the duties of their office as prescribed by law, but also to take the oath required by law to be taken by County Commissioners and County Clerks, respectively. But the oath to be taken by

a County Commissioner and a County Clerk is that required by the constitution of all officers, which does not differ materially from the oath specially required of the officers in question, nor materially add to it, except that it declares in effect that the affiant has not knowingly violated the election laws of the State. We are unable to discover in the provision for taking the oath required of County Commissioners and County Clerk, respectively, anything that constitutes them such officers. Indeed, the requirement as to County Commissioners is that they shall take the same oath as is required by law of other county officers; and it would hardly be contended that such requirement entitled them to claim they were occupying any office other than the one to which they had been elected or appointed.

These officers were appointed prior to July 6, 1896, and took the oath of office on that date. The election occurred in November following. It might occur that such officers would be appointed a year or more anterior to an election, in which case they would have little to do until the time for the election approached; but if the contention here made is sound, they would be entitled to full salary during the interim.

The failure to provide a compensation for their services is doubtless the result of an oversight on the part of the Legislature; but we cannot usurp its prerogatives, and fix a salary for public officials where it has neglected to do so. It is possible that it was not deemed advisable or necessary to compensate these officers. It is not the only instance of the required performance of public duty without pay. The case of school trustees is a notable illustration. They occupy an important position of trust and responsibility, but their services are rendered gratuitously.

As there is no statute providing for compensation for the services of those officers, they are not entitled to any. But in respect to expenditures for supplies required in the discharge of their duties the rule is different. The provision for holding an election necessarily implies the purchase of

election supplies, and the equipment required by law for conducting a valid election. They are a public charge. Though unorganized, the county had an existence as an unorganized county, and for election purposes was segregated from the parent counties. It became the duty of the officers to obtain the requisite books and other paraphernalia to carry on the election, and, by implication, they were authorized to procure them on the credit of the county, at a reasonable expense. Such things as books, for the clerk's record, stationery and postage stamps for correspondence, were clearly necessary; and their procurement was within the authority of the commissioners and clerk; and their reasonable expenses incurred in all these and like matters should be refunded to them by the county.

The same rule may be held to apply, and we think it should, to the allowance of actual and proper expenses of the commissioners and clerk in going to and from their meetings and attending the same.

The courts ought, no doubt, to take judicial knowledge of the fact that, at the time Big Horn County was organized, it was without railroad communication, and there were no large towns within its borders. It may be that these officers came from different places and were obliged to journey a long distance, at some expense, for the purpose of meeting and discharging their duties. The clerk possibly was obliged to travel to different sections of the county to distribute election supplies; and this could hardly have been accomplished without some expense.

We are not prepared to say that in arriving at and equalizing such expenses, the county board, or the court, if called upon to adjust the matter, would not be justified in doing so upon the basis of a reasonable mileage and per diem allowance. In the case of Commissioner Lampman, the board allowed and paid him a certain sum on that basis; and we are of the opinion that they were authorized to do so. The allowances were made, as we understand, at the rate at which mileage and per diem is allowed by statute

to County Commissioners. His suit now brought is for the proportionate amount of the annual salary fixed by law for the office of County Commissioner. He is not entitled to that, and should not be permitted to recover it.

It must be understood that we do not admit any right in the officers to a per diem allowance as compensation for services. Our view is that in a county situated as Big Horn County was, it is possible that the most equitable and just method of reimbursement for outlay in the way of expenses while prosecuting public business, would be a stated allowance for expenses for each day employed, and a reasonable rate of mileage.

As indicated by what has been said, the question numbered 1 must be answered in the negative; and questions 2 and 3 require no answer, being disposed of by the negative answer to the first question. The fourth question, relating to expenses incurred, is answered in the affirmative. The fifth question need not be considered, and we do not decide the inquiry it presents, for the reason that, under our decision, it is not applicable to any fact in the case.

CORN, J., and KNIGHT, J., concur.