## DILLMAN, COUNTY CLERK, v. STATE EX REL. MERRILL.

### (No. 722.)

ELECTIONS—COUNTIES—UNORGANIZED COUNTIES—DUTY OF ORGANIZA-
TION COMMISSIONERS AND CLERK — PRIMARY ELECTION — FILING
NOMINATION PAPERS—FILLING VACANCIES.

1. Under the general law enacted in 1895 for organizing new
counties (Rev. Stat., 1899, secs. 1002-1012), as amended by
the act of February 24, 1909 (Comp. Stat., 1910, secs. 1049-
1060), it is the duty of the commissioners appointed to or-
ganize a county and their clerk to perform all the duties
imposed by law upon county commissioners and county
clerks, respectively, preparatory to, respecting, or incident
to the next general election occurring after the appointment
of said commissioners, where a special election has been
called and held prior to said general election for the pur-
pose of submitting to the qualified electors of the proposed
new county the question of division, and the vote has been
in favor of division.

2. The powers and duties imposed upon commissioners appointed
to organize an unorganized county, with reference to the
holding of elections in such county, by the general law for
organizing new counties, do not cease until the county is
organized, where a special election has been held in the
territory proposed to be cut off on the question of division
and the vote has been in favor of division.

3. Under the general law for organizing new counties, a county
will not be fully organized until its officers, at least its
county commissioners, are elected.

4. The provision of the act of 1911 creating the County of
Platte, and similar acts creating other new counties, to the
effect that until the new county shall have selected officers
as provided by law, and the same shall have duly qualified
as such, all such portions of said county, as at the time of
the passage of the act constituted a part of another county
for judicial, revenue and elective purposes, shall be attached
to said parent county, except as otherwise in the act pro-
vided, did not prevent the operation of the general law for
organizing new counties as to the duties imposed thereby
upon the organization commissioners and their clerk, with
reference to conducting the next general election after the
appointment of said commissioners, but the effect of said

provision in the act creating the new county was merely to continue the new county as a part of the original county or counties until its organization for election purposes, as to such elections only conducted by the old county that would necessarily be participated in by the electors within the territory of the new county if no provision had been made for the creation of such new county, and, hence, the provisions of the general law for the organization of new counties applies to any election pertaining to the pending or proposed organization of the new county, occurring after the appointment of the commissioners to organize the same.

5. While the clerk appointed by the commissioners appointed to organize a new county is not in all respects a county clerk, he is vested with authority to perform and is required to perform as to the next general election occurring after the appointment of the commissioners, all and singular the duties preparatory to, respecting, or incident to, said election, as are imposed by law upon county clerks in organized counties, where a special election has been held previous to such general election upon the question of division and the vote has been favorable thereto; these duties include the preparation of the ballot and the distribution of the proper number of ballots by said provisional clerk, and with him all papers must be filed that are required by the general election law to be filed with the county clerk, and he is required to certify all papers and returns that are required by the general election law to be certified by the clerk, and all notices required to be sent and papers required to be certified to the county clerk will be required to be sent or certified to the provisional clerk of the new county, as to such general election occurring within the territory of such new county.

6. For the purpose of holding and conducting the general election in a new county in process of organization, including the voting for all candidates for office that are to be voted for therein, and upon all questions submitted to the electors at large, the election is required to be held and conducted therein the same as if the county was organized, except that the organization commissioners constitute the canvassing board, and, with their clerk, are vested also with authority to perform all the duties preparatory to, respecting, or incident to such election which are imposed by law upon county commissioners and county clerks, respectively, in organized counties.

7. Under the primary election law (Laws 1911, Ch. 23), the commissioners appointed to organize a new county, within which a vote has been taken favorable to division, are required to designate the voting precincts in which to hold the primary election required by law to be held prior to the next general election after the appointment of such organization commissioners, since that is an act preparatory to, respecting, and incident to the general election, and the duty of county commissioners in respect thereto is imposed upon the commissioners and clerk appointed to organize the new county.

8. Under the provision of the primary election law (Laws 1911, Ch. 23, sec. 8), that nomination papers for offices to be voted for wholly within the county shall be filed with the county clerk of the proper county, the word "county" means a county, whether organized or not, if in process of organization, which acts as a county for the purposes of general elections, and a candidate for precinct committeeman of a political party, where the precinct is wholly within a county in process of organization, should file his nomination papers with the provisional clerk of the new county appointed by the organization commissioners.

9. Section 28 of the primary election law of 1911, which provides for the canvass of the votes at a primary election by the county clerk and two justices of the peace, has no application to counties in process of organization in which there is no justice of the peace, and hence under section 17 of the act providing that "except as otherwise provided, a primary election shall be conducted as required for general elections," and the provision of the general law for organizing counties that the votes of general elections in the new county shall be canvassed by the organization commissioners, the votes at the primary election in an unorganized county should be canvassed by such commissioners, where the new county is to be organized by the election of its officers at such general election.

10. The nomination papers of candidates for the legislature to be voted for at a primary election, under the primary election law of 1911, should be filed with the Secretary of State, since a member of the legislature is a state officer, and the office is not one to be voted for wholly within the county where, by reason of the creation and pending organization of a new county in territory taken from another county such candidates are to be voted for in the old county,

as well as in the new county in process of organization, the
new county remaining for the purpose of legislative repre-
sentation a part of the old county from which it is taken
until the making of a new apportionment. In such case,
under the provision of the primary law recognizing and
continuing party committees until new committeemen
are chosen at a primary election, and a provision of the
primary law authorizing the filling of vacancies before the
printing of the primary election ballots by the party com-
mittee, a vacancy as to the office of senator or representative
to jointly represent the parent county and a county taken
from it in process of organization can be filled by the party
committee of the parent county, since there will be no
party committee in the new county, as such, until after the
primary election.

11. The primary election law of 1911 expressly permits the nom-
inating of candidates, as provided in the general election
law, by petition, and provides also, that any political or-
ganization which at the last preceding election cast less
than 10 per cent of the total votes cast for representative
in Congress may nominate candidates in the manner pro-
vided by existing laws for conventions; provided, that all
such conventions shall be held on the same days as the pri-
mary election provided for in the election law: *Held,* that
such petitions and conventions will be governed by existing
laws therefor other than the primary law, except as stated
in that law, and certificates nominating candidates for the
Legislature in that manner will necessarily be filed as re-
quired by such other existing laws.

[Decided June 18, 1912.]                    (125 Pac. 367.)

ERROR to the District Court, Laramie County; HON.
CARROLL H. PARMELEE, Judge.

Application to the district court for writ of mandamus
brought in the name of the state, on the relation of M. R.
Merrill against William H. Dillman, as county clerk of the
County of Laramie. The purpose of the action was to
require the filing by the defendant of a nomination paper
presented by the relator nominating him as a candidate for
precinct committeeman to be voted for in a certain precinct
in the new County of Platte, a county in process of organi-
zation. A demurrer to the petition and alternative writ was

overruled and judgment rendered granting the relief prayed for. The defendant brought the case to the Supreme Court on error. The other material facts are stated in the opinion.

*C. L. Rigdon* and *S. G. Hopkins,* for plaintiff in error.

The question involved is whether the organiation commissioners appointed in the County of Platte and their provisional clerk will have jurisdiction over and the conduct of the election of officers at the coming general election in said county, or whether the county clerk and the other proper officers of Laramie County (the parent county) will have such jurisdiction. There would seem to be no doubt that under section 1057, Compiled Statutes, the provisional officers of the new county are to conduct the election, and that said section not only refers to the special election to determine whether or not the new county shall be separated from the old county, but also to the general election at which the new county officers are to be chosen. Under that construction of the statute the general laws provide a clear and certain method of organization. It could not have been intended by the act creating the new county that such county should remain a part of the old county for election purposes, with reference to the election of officers for the new county. The provision was merely inserted as a saving clause for the purpose of giving the parent county authority to conduct necessary elections in the new county prior to the complete organization of the new county. The act creating the new county is a special law, and it cannot be construed as amending or repealing the general law for the organization of counties, because by such a construction it would be unconstitutional, since it requires a general law to organize a new county. Provisions of the statute should be interpreted in such a manner, if possible, to give it effect within the limitation of the constitution. The election of officers in a new county is as much a part of its organization as the election to determine whether said county shall be separated from the old county.

Members of the legislature are state officers, and the nomination papers for candidates for the legislature to be voted for in the new and the old counties jointly should be filed with the secretary of state.

*Clark & Clark* and *Ray E. Lee,* for defendant in error.

Neither the general law for organizing new counties, nor the special law creating Platte County, nor the direct primary law, confers upon the commissioners and clerk appointed to organize Platte County the authority to hold a primary election. Section 1057, Compiled Statutes, limits their authority to one election, and that election is the one to be held upon the question of division. The organization commissioners are not county commissioners and the clerk appointed by them is not a county clerk. (Taylor v. Commissioners, 11 Wyo. 106.) There is no county clerk of Platte County, and hence no county clerk in whose office the relator can file his nomination papers, unless, under the provisions of the act creating Platte County, which retains it as a part of Laramie County for elective purposes, such papers can be filed with the county clerk of Laramie County. There are no justices of the peace of Platte County, and hence the provision in the primary law for canvassing the votes would be of no avail in Platte County, and the votes could not be canvassed, if the election was conducted by the organization commissioners. The logical result of the several laws is that the nomination papers of candidates for offices in Platte County should be filed with the county clerk of Laramie County, and that the primary election in that county should be under the control and supervision of the proper officers of Laramie County, including the canvass of the votes. This would not work a hardship upon either county, since the direct primary ballots could be prepared by the county clerk of Laramie County and distributed by him, and the canvassing board could declare the result in both counties.

Potter, Justice.

This case involves generally the question whether the primary election for the nomination of candidates of political

parties for offices to be filled at the general election to be held November next should be under the control and supervision of the old county as to the nomination of candidates for an office to be voted for at such general election in a county yet unorganized, but in process of organization, created out of a part of the territory of such old county, or whether as to the nomination of such candidates, the primary election is to be conducted under the control and supervision of the commissioners and clerk appointed for the purpose of organizing such new county. The particular question to be decided is whether the nomination papers of a candidate for precinct committeeman of a political party, where the whole of the precinct is within such new unorganized county, should be filed with the county clerk of the old county or the clerk of the board appointed to organize the new county. A determination of that question necessarily involves a consideration of the general question above stated.

On June 4, 1912, the petition in this case was filed in the district court in Laramie County, setting forth that the defendant therein named is county clerk of the County of Laramie; that the relator, M. R. Merrill, is a member of the Democratic party and a resident and qualified elector of precinct No. 1 in election district No. 4 in said county; that the whole of said precinct is included in that part of the territory of said county which constitutes the unorganized County of Platte; that heretofore, at a special election duly called and held in said unorganized County of Platte under the control of the commissioners for organization purposes appointed by the governor, a majority of the persons voting voted in favor of the creation and organization of said County of Platte; that the relator desires to become a candidate for the position of a member of the Democratic County Central Committee from said precinct to be voted for at the primary election to be held August 20, 1912, and on June 3, 1912, he caused a nomination paper to be properly signed and verified nominating the relator as a candidate for said position; that on June 4, 1912, he caused said

nomination paper, together with a statement signed by him
to the effect that he would qualify as such officer if nom-
inated and elected, to be offered to the said county clerk at
his office for filing; and that defendant refused to accept
the said nomination paper and declaration and refused to
file them. Upon these facts a writ of mandamus was prayed
to require the defendant, as county clerk of said County of
Laramie, to accept the said nomination paper and declaration
and file the same in his office.

An alternative writ was issued, and the cause was heard
in the district court upon a general demurrer to the petition,
and thereupon it was ordered that the demurrer be over-
ruled, and the defendant having elected to stand upon his
demurrer and refused to further plead, that the said defend-
ant accept and file in his office the nominating paper and
declaration aforesaid. The defendant has brought the case
here on error.

In the argument our attention was called to the fact that
at the last session of the Legislature, the same session at
which the primary election law was passed, several new
counties were created by defining the boundaries thereof
and giving a name thereto respectively, and that in each of
said new counties organization commissioners had been ap-
pointed, and a special election had been held at which was
submitted to the qualified electors of the territory proposed
to be cut off the question of division, in compliance with the
provision of the Constitution that no county shall be divided
unless a majority of the qualified electors of the territory
proposed to be cut off voting on the proposition shall vote
in favor of the division, and in compliance with the statute
providing for such election, and also the question of the lo-
cation of the county seat for such new county; and that at
such special election so held in each of said new counties
the vote was in favor of said division and had been so de-
clared, and the county seat had been located; also that at
least two of such new unorganized counties are respectively
composed of territory taken from two or more counties.

And that all the territory embraced in each of the new coun-
ties of Platte and Goshen was taken from Laramie County.
It was also suggested that a determination of the particular
question here presented will necessarily determine the extent
and manner of the operation of the primary election law
in each of such new unorganized counties, affecting as well
as other offices the nomination of candidates for the office
of senator and member of the house of representatives in
the State Legislature to be voted for at such primary elec-
tion; and it is argued that if such election in an unorgan-
ized county, which is in process of organization as aforesaid,
is to be conducted under the control and supervision of the
organization commissioners and clerk, it will be impossible
by reason of certain provisions of the primary election law,
and the acts creating the new counties, for party candidates
for the legislature to be nominated as required by the pri-
mary law, and voted for at the primary election in the new
counties. It is also argued that if the election is to be con-
ducted by the officers of the old counties, respectively, from
which the new counties are taken, there will be much diffi-
culty, if it will not be impossible, for the candidates for
office in the new counties to be nominated as required by the
primary election law, at least in such new counties as are
respectively composed of territory taken from two or more
counties; and that these matters should be considered in
construing the various provisions of the primary law, in
order that they may be so construed as to operate uniformly
and in harmony with the laws controlling the general election
to be held in November.

The question thus presented is therefore not only an im-
portant one, but it is not free from difficulty, for it is con-
ceded that the primary election law is ambiguous respecting
the matters to be considered, because of some of the
language employed therein, and the omission of any refer-
ence to unorganized counties, and that one provision which
is similar in each of the acts creating a new county adds to
the uncertainty of the application of such primary law to the
election in such unorganized counties.

It is necessary to first consider the provisions controlling the general election in November in the new counties, bearing in mind that the main object of the primary law is to· provide for the nomination of candidates to be voted for at the November election. The Constitution provides that in several enumerated cases the Legislature shall not pass local or special laws, and that in all other cases where a general law can be made applicable no special law shall be enacted. (Art. III, sec. 27.) And that the Legislature shall provide by general law for organizing new counties. (Const., Art. XII, sec. 2.) A general law for such purpose was enacted in 1895. (Laws 1895, Ch. 59; Rev. Stat. 1899, secs. 102–112; Comp. Stat. secs. 1049-1060.) By that act it was provided, and it continues to be so provided, that whenever a petition of a prescribed number of the electors and taxpayers residing within the limits of an unorganized county, shall be presented to the governor for the organization of such county, under certain conditions named in the act, it shall be the duty of the governor, upon being satisfied that the county is one entitled to be organized under the provisions of the Constitution and statutes, to appoint the three persons named in such petition as commissioners to organize such county and notify them of their appointment. Also that such commissioners shall, as soon as practicable, after receiving notice of their appointment, meet at some practicable place, within such unorganized county, to be selected by them, and that each shall take and subscribe an oath to· the effect that he will faithfully and impartially discharge the duties of his office as prescribed by law, and also the oath required to be taken by county commissioners. That such commissioners shall then appoint a clerk who shall take an oath to the effect that he will faithfully and impartially discharge the duties of his office as prescribed by law, and also the oath required of the county clerk, and that the commissioners shall at the same time designate a place for the transaction of their official duties. (Laws 1895, Ch. 59, sec. 5; Rev. Stat. 1899, secs. 1006, 1007; Laws 1909, Ch. 75, sec. 1; Comp. Stat. 1910, secs. 1053, 1054.)

In the original act aforesaid it was provided that at the next general election after the appointment of such commissioners, an election shall be held in such county in the same manner as if it was organized; and that in addition to voting for a member of Congress and such state and district officers as may be provided for by law, the electors of such county shall at such election elect the members of the senate and house of representatives of the state to which such county is entitled, and also the county and precinct officers provided for by law; and that at the same time they shall choose a county seat in the same manner in which county officers are elected. (Laws 1895, Ch. 59, sec. 6; Rev. Stat. 1899, sec. 1008.) Section 1007, Revised Statutes of 1899, contained that part of section 5 of the Act of 1895 which provided for the appointment of a clerk of the organization commissioners, his oath, and the designation of a place by the commissioners for the transaction of their official duties. There was no provision in the Act of 1895 nor in any other act until 1909, for the submission to the electors in the unorganized county of the question of division. But by an act approved February 24, 1909, such a provision was made by amending section 1007 aforesaid. The section as amended contains without change the provisions last above mentioned and the following added after the provision for designating a place for the transaction of official duties: "and shall, immediately, in the manner now prescribed by the laws of Wyoming for holding special elections for county and precinct officers, call and arrange for a special election for the purpose of submitting to the qualified electors of the territory proposed to be cut off, the question of whether said qualified electors are in favor of division. At the same time said electors shall in like manner choose a location for a county seat for said new county. Provided, however, That said commissioners may call and arrange for such special election co-incident with any general election." And, by section 2 of said Act of 1909 it was provided as follows: "Any and all expenses for such special election shall be

borne by the proposed new county, and the county commissioners of the old county shall be empowered to make a special levy upon the taxable property within the boundaries of the proposed new county for the purpose of defraying the expenses of said election, and paying the salaries of the first board of county commissioners of the said new county, appointed by the governor, and the salary of the first county clerk thereof; also to defray any and all expenses incident to the said special election. The county commissioners and the county clerk first appointed in the proposed new county shall receive a salary of $50.00 each." (Laws 1909, Ch. 75; Comp. Stat. 1910, secs. 1054, 1055.)

Section 1008, originally section 6 of the Act of 1895, was also amended by the said Act of 1909 to read as follows:

"If a majority of the qualified electors residing in the territory proposed to be cut off vote in favor of division, then said new county shall be organized, and at the next general election, or in case said special election was called co-incident with the general election, then at such general election said qualified electors residing in said new county shall in the manner provided by law, vote for a member of Congress, state and district officers, and shall at such election elect the members of the senate and house of representatives of the state to which said county is entitled; and also the county and precinct officers provided for by law." (Comp. Stat. 1910, sec. 1056.)

By section 7 of the Act of 1895, (Rev. Stat. 1899, sec. 1009; Comp. Stat. 1910, sec. 1057.) it was provided that the commissioners and said clerk appointed as aforesaid, "shall respectively at the time and in the manner provided by law, perform all and singular the duties preparatory to, respecting or incident to such election, which are imposed by law upon county commissioners and county clerks respectively in organized counties; and such election shall be held, conducted, and all matters preparatory or incident thereto, or connected therewith, shall be done and performed as in elections held in organized counties, except that the re-

turns thereof shall be canvassed and the result declared by the commissioners appointed by the governor." Section 8 of the Act of 1895 (Rev. Stat. 1899, sec. 1010) provided, and it continues to be so provided, (Comp. Stat. 1910, sec. 1058) that on the first Monday in January next following, or as soon thereafter as may be possible, the county and precinct officers elected in such county shall respectively qualify and enter upon their respective duties as is provided by law in organized counties; and when a majority of the county commissioners so elected shall have qualified and entered upon their duties such county shall be deemed and held to be organized, and shall be vested with all the powers of organized counties under the laws of this state. It was and is also provided by the statute that the commissioners appointed by the governor shall approve the bonds of the county commissioners of the new county elected at such first election. (Laws 1895, Ch. 59, sec. 9; Comp. Stat. 1910, sec. 1059.) And that "for the purpose of such election any such unorganized county shall be deemed to be segregated from the original county or counties from which the same is taken." (Laws 1895, Ch. 59, sec. 10; Comp. Stat. 1910, sec. 1060.)

At this point we will consider the contention of counsel for the relator that the provisions of section 1057, Compiled Statutes, originally section 7 of the Act of 1895, respecting the conduct of the election, and the duties of the organization commissioners and clerk respectively concerning the same, applies only to the special election held for the purpose of taking the vote of the electors in the territory embraced in the proposed new county on the question of division, and that the power and duties of such commissioners and clerk extends no further than holding such special election and ascertaining the result thereof. It is clear, we think, that such contention cannot be sustained. In the Act of 1895 the provisions referred to immediately followed a section which plainly provided for an election in the proposed new county at the next general election after the ap-

pointment of the commissioners, at which the electors therein should vote for a member of Congress, state and district officers, members of the senate and house of representatives, and the county and precinct officers of such new county. The duties preparatory to, respecting or incident to *that* election, were the duties required to be performed by the organization commissioners and clerk; and it was *that* election which the statute required should be held and conducted, and all matters preparatory or incident thereto, or connected with, done and performed, as in elections held in organized counties, except that the returns should be canvassed and the result declared by the organization commissioners. The amendment of 1909 made no material change in that respect. Section 1008, Revised Statutes of 1899, which was section 6 of the Act of 1895, as amended in 1909, merely adds the provision, so far as this question is concerned, that in case the special election on the question of division is called co-incident with a general election, then at the same general election the qualified electors in the proposed new county shall vote for and elect the several officers named. The election referred to in the section as amended is the general election to be held following the appointment of the commissioners at which state and district and other officers are to be elected, including the county officers. To prevent a construction that would postpone the election of officers of the new county for two years, or until another general election, in case the special election on the question of division should be called co-incident with a general election, it was provided that such county officers should be selected at the same general election at which such question of division should be so submitted. Big Horn County was organized under this general statute, and its officers were elected at the general election in November, 1896, which was conducted for all the purposes of that election by the provisional officers of said county. (See Taylor v. Commissioners, 11 Wyo. 106, 70 Pac. 835.) Unless, therefore, there is some other statute to the contrary, the organization commissioners and clerk

of a new county, where the question of division has been settled by a vote favorable thereto, will be required at the general election in November to perform all the duties preparatory to, respecting or incident to such election, which are imposed by law upon county commissioners and county clerks, respectively, in organized counties; and *that* election in the unorganized county is required to be held and conducted, and all matters preparatory or incident thereto, or connected therewith, to be done and performed as in elections held in organized counties, except that the returns are to be canvassed by the organization commissioners, and the results declared by them, so far as such results are to be declared by county canvassers.

Such commissioners are appointed for the purpose of organizing the county; and the county will not be fully organized until its officers, at least its county commissioners, are elected. And such commissioners and clerk are also required, as above stated, to perform all the duties imposed by law upon county commissioners and county clerks, respectively, with reference to the general election at which the new county officers are required to be elected. And they are required further to approve the bonds of the newly elected county commissioners. It is plain that these powers and duties do not cease until the county is organized, in case a special election has been held and the vote has been in favor of division.

We are not here required to determine the manner of conducting the general election in a proposed new county where the special election on the question of division is called co-incident with such general election. In such case complications might possibly arise owing to the uncertainty of the result of the special election, and the seemingly apparent necessity on account of that uncertainty of conducting a general election in the territory embraced in the proposed new county not only for the officers thereof, but also for officers of the old county, notwithstanding that if division carries the vote in the proposed new county for officers

of the old county may be nugatory, or in the event that it does not carry the vote for officers of the new county would have no effect. If we are right in assuming that such a condition might arise, the provision allowing the vote on the question of division to be taken at the general election and the new county officers to be voted for at the same election would seem to be an unfortunate one if an attempt should be made to follow it.

This brings us to a consideration of a provision found in the several acts of 1911 creating the new counties referred to which seems in a large measure to have caused this controversy. The several acts are in effect the same except as to the name of the county, and the description of boundaries. The act creating Platte County provides in section 3 as follows: "Until such time as the said County of Platte shall have selected officers as provided by law, and the same shall have duly qualified as such, all such portion of said Platte County, as at the time of the passage of this act belong to or are a part of some other county for judicial, revenue and elective purposes, shall be attached to the county from which said Platte County is taken, except as hereinafter provided by law." The only provisions of the act following that section at all qualifying it are those found in sections 4 and 5 to the effect that until a re-apportionment law may be passed fixing the legislative representation for said County of Platte, the portion of the county from which it is formed shall constitute a portion of Laramie County (the old county) for the purpose of legislative representation; and that for all purposes for which a county exists in this state, after its organization, and the qualification of its elective and appointive officers, as provided by law, said county of Platte shall be deemed and held to be one of the counties of the state, "from and after the passage of this act." Similar provisions are found in each of the other acts. Hot Springs County was taken from parts of three counties. Section 4 of the act creating that county provides that until a census shall be taken upon which a re-apportionment law may be

based, a portion of the respective counties from which the County of Hot Springs is formed shall be continued to be a part of Big Horn, Fremont and Park counties, respectively, for the purpose of legislative representation. (Laws 1909, Ch. 9.)   Campbell County was taken partly from Crook County and partly from Weston County, and the act creating it contains a provisioin to the effect that until the new county shall be entitled to a separate representation in the legislature under a duly enacted apportionment act, it shall be and remain a part of the counties of Crook and Weston, respectively, for the purpose of legislative representation.

It is argued that if the general law aforesaid for the organization of new counties could at any time have been construed as vesting authority in the organization commissioners and clerk to conduct a general election in a new county prior to its organization, it has been rendered inapplicable in that respect to the new County of Platte, and the other new counties in the same situation, by the provision above mentioned contained in the act creating the new county that until its organization such new county shall be attached to the county or counties from which the same is taken, for election purposes.   We do not so construe that provision, nor can it, we think, be reasonably so construed.   The natural and reasonable construction of the provision aforesaid is that it continues the new county as a part of the original county or counties until its organization, for election purposes, only as to such elections conducted by the old county that would be participated in by the electors within the territory of the new county if no provision had been made for the creation of the new county.   This is made clear by a reference to the former legislation on the subject.   Practically the same provisions as those found in the new county acts and the general law for organizing counties are to be found in all the legislation relative to new counties since Wyoming was organized as a territory.   In the Act of December 10, 1875, which defined the boundaries of Crook and Pease counties (the name of Pease County being afterwards

changed to Johnson) and provided for the organization thereof, it was declared that the county embraced within the boundaries of such counties "shall for judicial and *all other purposes,* remain and constitute, *as now,* part of the counties from which the same is proposed to be taken, respectively, until organized as hereinafter provided." But in the same act it was provided that upon the petition of a prescribed number of electors residing in either of the proposed new counties, the governor should appoint three electors resident therein to act as commissioners in organizing the same; and that such commissioners should establish voting places, appoint judges of election, hold an election at a time to be selected by them for all county and precinct officers for such county, and canvass the vote thereof. (Comp. Stat. 1876, pp. 198-201.) The provision that the new county should, until its organization, remain a part of the county from which it was taken "as now" for judicial "and all other purposes" was certainly broad enough to include election purposes. Yet, in connection with that provision, it was also provided that the election to be held for the selection of officers in the new county should be called and conducted and the result thereof canvassed by the organization commissioners; and there seems to have been no thought that the two provisions were inconsistent.

Again in 1888, by the act in which the boundaries of the counties of Converse, Natrona and Sheridan were defined, it was provided that until organized the region of country embraced within the limits of an unorganized county should remain, constitute and be a part of the county or counties from which the unorganized county shall be taken, "for municipal, judicial and other purposes." And in that act provision was made for the appointment of commissioners to organize any such county, requiring them to call an election for county and precinct officers, establish voting places, appoint judges of election, and canvass the votes cast at such election. And in each such counties such an election was held resulting in the organization of the counties

(Laws 1888, Ch. 90.) In 1890 the act creating Big Horn County was passed. (Laws 1890, Ch. 48.) In one section it was provided that until said county shall have selected officers, as provided by law, and the same shall have qualified as such, all portions of the county which, when the act was passed, belonged to or formed a part of some other county "for judicial, revenue and election purposes," should be attached to the counties, respectively, from which such portions of said county are taken. And in other sections the Act of 1888 providing the method of organizing unorganized counties was amended in certain particulars, but the authority of the organization commissioners to call and conduct the election for county and precinct officers and canvass the returns thereof was continued. Thus, the two provisions existed together, apparently without it being supposed that they were inconsistent, one of them continuing the several portions of the unorganized county as a part of the county from which they were respectively taken for election purposes, until the officers of the new county shall have been elected and shall have qualified, and the other vesting authority in the organization commissioners to call and conduct in all respects the election for county and precinct officers of the new county, when it became proper to hold such an election. If such provisions were not inconsistent when found in the same act, and it must be conceded that it would have been necessary to give them such an interpretation as would give due effect to each according to the manifest legislative intent, the provisions of the general law and the new county acts under consideration may as reasonably be read and construed together allowing that effect to each which will not operate to destroy the other. And by doing so they can and ought to be construed and enforced as above indicated.

There is another reason, even more conclusive, which requires a construction of these provisions giving full force and effect to the general law aforesaid relating to the conduct of the election at which the officers of the new county

are to be elected. It is a general law enacted pursuant to
the constitutional provision that the legislature shall provide
by general law for organizing new counties. And it is,
therefore, beyond the power of the legislature to enact pro-
visions of that nature to operate and to be applicable only
to a particular county named. The act creating Platte
County legislates for that county alone, and the other acts
creating new counties likewise contain provisions which re-
fer only to the county therein named or the territory to be
embraced therein. It would not only have been an uncon-
stitutional exercise of power for the legislature to have pro-
vided specially the method of organizing, or holding the elec-
tion in connection with organizing the particular new county
named in either act, but it is not to be presumed that the
intention was to do so; especially, in view of the fact that
there is nothing else in either act that can be suggested as
even remotely indicating such intention. Indeed the con-
trary intent is manifest, for in several sections of each of
the new county acts the necessity of other statutory pro-
visions to enable the county to organize is recognized. As
an illustration of this it is sufficient to refer to the act creat-
ing Platte County. Section 2 prescribes the judicial district
to which the county shall belong after it "shall have been
organized and shall have chosen its officers, as provided by
law." Section 3, which contains the provision in question,
declares that the new county shall be attached to the county
from which it is taken until such time as it "shall have
selected officers as provided by law." And section 4 at-
taches the new county to the parent county for legislative
representation, after it "shall have been organized, as pro-
vided by law." These references to the organization of the
county, and the selection of its officers, "as provided by law,"
are the more significant, in this connection, in view of the
omission from the act of any provision for the organization
of the county. A provision postponing the operation of the
general law in the case of a particular county named until
after its organization would be equally as objectionable as a

special provision for its organization applicable to it alone, for that would be an attempt to prevent the general statute from operating in the manner and at the time therein provided, and in effect, to amend it by limiting its application.

Restating our conclusion respecting the provision in the acts creating the new counties which declares that the new county shall be attached for election purposes to the parent county until it shall have been organized by the selection of its officers and their qualifications as such, and the effect thereof upon the provisions of the general law for organizing new counties relating to elections, it is, that such provision of the new county acts applies only to such elections as would necessarily be participated in alike by the electors within the proposed new county and those within the remaining part of the old county, as electors of such old county. This excludes any election pertaining to the pending or proposed organization of the new county, and requires the application of the provisions aforesaid of such general law to the general election to be held in November next in the new counties.

Referring again to those provisions, we observe that at such general election the qualified electors residing in the new county are required, in the manner provided by law, to vote for a member of Congress, state and district officers, and elect the members of the senate and house of representatives of the state to which said county is entitled, and also the county and precinct officers provided for by law. (Comp. Stat., sec. 1056.) And that, at the time and in the manner provided for by law, the commissioners appointed to organize the county and the clerk appointed by them shall perform all and singular the duties preparatory to, respecting or incident to *such election,* which are imposed by law upon county commissioners and county clerks, respectively, in organized counties; and that *such election* shall be conducted, and all matters preparatory or incident thereto, or connected therewith, shall be done and performed as in elections held in organized counties, except that the returns

thereof shall be canvassed, and the result declared by said commissioners. (Id. sec. 1057.) And we observe, further, that such general law declares that for the purpose of *such* election any such unorganized county shall be deemed to be segregated from the original county or counties from which the same is taken. (Id. sec. 1060.) Thus, while the clerk appointed by the organization commissioners may not be in all respects, if any, technically considered, a county clerk, he is vested with authority to perform and is required to perform as to *such election* all and singular the duties, preparatory to, respecting or incident to the election, as are imposed by law upon county clerks in organized counties Concerning those duties we need only refer to that relating to the preparation and distribution of ballots. The names of all candidates for office are required to be printed upon one ballot. The county clerk is required to prepare such official ballot, cause the same to be printed, and distribute a suitable number thereof to the judges of election of each voting precinct. It is apparent that there would be much difficulty, if it would not be quite impossible to comply with the law, if ballots were to be prepared for use in the new county by the county clerk of the parent county containing the names of candidates for all officers other than county and precinct officers, and another ballot by the clerk in the new county containing the names of candidates for county offices, for we do not think that such a procedure is contemplated by any provision of the statute, and certainly it is not provided for. We think there must be but one ballot containing the names of candidates, and that in the unorganized county, whose officers are to be selected at the election, the ballot is to be prepared, and the proper number distributed by the provisional clerk in that county. In other words, his office is equivalent to that of county clerk, and, within the meaning and operation of the general election laws, he is the county clerk, with whom all papers must be filed that are required by the general election law to be filed with the county clerk, by whom all papers and returns are

to be certified that are required by that law to be certified
by the county clerk, and to whom all notices are to be sent
and papers certified that are required by that law to be sent
or certified to the county clerk. For the purpose of holding
and conducting such general election in the territory em-
braced within the new county in process of organization,
including the voting for all candidates for office that are to
be voted for therein, and upon all questions submitted to
the electors at large, the election is to be held and conducted
therein the same as if the county was organized, except that
the organization commissioners constitute the canvassing
board. This seems to us to be the proper construction of
the statutes aforesaid; and we doubt if under any different
construction, the provisions of the general election law, and
the law controlling the organization of new counties, could
be complied with in the territory embraced within a new
county in process of organization.

Thus far we have not considered the primary election
law, and have not intended by anything that has been said
with reference to the general election law to determine the
extent and manner of the operation of the primary law.
The object of the primary law is to provide for the nomina-
tion of candidates to be voted for at the general election,
and having concluded that such general election in a new
county about to be organized as aforesaid is to be held and
conducted therein under the control of the provisional of-
ficers in the same manner as in an organized county, with
the exception that the organization commissioners consti-
tute the county canvassing board, we are prepared to con-
sider the provisions of the primary law and determine their
application to the election in the new county. Such pro-
visions should, if possible, be construed so that they may
operate throughout the state uniformly and permit the nom-
ination and election of officers in accordance with the evident
purpose of the act. Before doing so it seems desirable to
refer to certain provisions of the statutes concerning the
nomination of candidates as they stood when the primary

law was enacted, that we may observe the principal changes made by that law.

The general election law regulating the nomination of candidates and requiring the votes of electors to be expressed upon an official ballot was first enacted in 1890, a few months prior to the admission of Wyoming as a state. By that act, and until the enactment of the primary law in 1911, nominations might be made by conventions of political parties or by petition. And it was provided in section 87 that certificates of nominations for officers to be filled by the electors of the entire state, or of any division or district greater than a county shall be filed with the secretary of state; that certificates of nomination for county and precinct officers, "including members of either branch of the legislature," shall be filed with the clerks of the respective counties wherein the officers are to be elected; and "that the certificate of nomination for joint member of either branch of the legislative assembly shall be filed in the office of the county clerk of each county to be represented by such joint member." Provision was also made as to municipal elections. The secretary of state was required to certify to the respective county clerks the names and description of persons nominated in the certificates of nomination filed in his office. The names of the candidates whose respective certificates of nomination were duly filed and certified were required to be printed in a prescribed manner upon the official ballot prepared and distributed by the respective county clerks.

When the Act of 1890 was passed, not only might it happen that a new county should remain attached to the original county for the purpose of legislative representation, but two or more original counties might be expressly given joint representation in addition to separate representation, and that occurred in at least one instance. That condition was provided for in that act as shown above. Upon the supposition, probably, that the provision for the nomination of joint legislative candidates had become obsolete on account of the constitutional provision that each county shall

constitute a senatorial and representative district, it was omitted from the Revision of 1899, and consequently from the later compilation of the statutes. But it has not been expressly repealed or amended by the legislature, nor by implication except so far as it may be affected by the primary law of 1911. And we believe that it was followed in the case of new counties organized after the Constitution became effective, while they remained a part of the original county for the purpose of legislative representation, on the theory that such provision for nominating a joint member was operative in such case, as the only statutory provision governing the matter. The Constitution, it is true, declares that each coutny shall constitute a senatorial and representative district. (Art. III, sec. 3.) But it also provides for a re-apportionment for senators and representatives only at the session of the legislature next following an enumeration of the inhabitants of the state in the year 1895 and every tenth year thereafter, and the session next following an enumeration made by the United States. (Art. III sub-title "Apportionment," sec. 2.) By section 4 of the same article and sub-title an apportionment was made of senators and representatives among the existing organized counties. Subsequently other counties were organized but before a re-apportionment act was passed. Concerning such counties as to their representation in the legislature it was said in the concurring opinion of the writer in State ex rel. v. Schnitger, 16 Wyo. 479, 538, 95 Pac. 698, 714: "Although each county is expressly constituted a separate senatorial and representative district by the Constitution itself, that provision would necessarily be read in connection with the section making a specific apportionment, which, for that purpose, mentioned the counties as they existed when the Constitution was framed. To prevent the non-representation of the territory and people included in the newly-organized counties, they would necessarily be regarded as parts of the original counties, respectively, for the purposes of legislative elections and representation. And that course was in fact

followed in the election of the first legislature that convened
in November, 1890, and the second that convened in Janu-
ary, 1893." The several county acts in question, as above
shown, continued the new counties as parts of the original
counties, respectively, for such purposes until an act should
be passed giving them separate county representation. By
the above quoted remarks that the new county remained a
part of the original county for the purposes of legislative
elections and representation, it was not meant that such
elections were conducted or controlled by the original county,
for, clearly, the new county having been organized it held
and conducted its own election, and, under the law then in
force for nominating and certifying the nomination of can-
didates, there was no difficulty in relation to that matter.
The fact should be mentioned that the result of general
elections for members of the legislature are not declared by
the county canvassing board in any case, but an abstract of
the canvass made by such board of the votes for members
of the legislature was and is required to be sent to the secre-
tary of state, to be canvassed and the result declared by the
State Canvassing Board.

It appears, therefore, that as the law stood at the time of
the last general election, and the elections preceding it since
the present method of voting by official ballot has been in
operation, there would have been no trouble in applying the
general election law, together with the general law for the
conduct of the general election in new counties about to be
organized by electing their officers at such election, for under
the last mentioned law, the provisional clerk is required to
perform all the duties of county clerk with reference to the
election.

The primary law calls for an election before the general
election for the purpose of determining thereby the nomin-
ations to be made of certain candidates to be voted for at
the general election. Such primary election must, of course,
require the performance of official duties preceding and fol-
lowing it, and, as to a candidate required to be nominated

at the primary election, the nominating petition is for the purpose of getting his name upon the primary election ballot, instead of the official ballot as under the old law. It should be borne in mind, however, that the primary election is a matter preparatory and incident to, and connected with the general election. In considering the act providing for such primary election, we shall refer, as we proceed, to only those provisions that may seem pertinent to the questions necessary to be considered in determining the questions here presented.

The act provides for preparing, circulating, signing and filing nomination papers nominating candidates to be voted for at the primary election. It is provided in section 8 of the act concerning such nomination papers as follows:

"All nomination papers herein required shall be filed as follows: (1) For state officers, judges of the supreme court and district courts, senators in the Congress of the United States, and Representatives in Congress, in the office of the secretary of state, at least thirty days before the date of the primary election next ensuing; * * * (2) For offices to be voted for wholly within one county, and for officers not herein otherwise provided for, in the office of the county clerk of the proper county at least twenty days before the date of the primary election next ensuing. (3) For city or town officers, when the election of such city or town officers is at a different time and place from the election of county officers, in the office of the city or town clerk, at least ten days before the primary election next ensuing."

It is conceded that the nomination paper of the relator is required to be filed in the office of the county clerk, but on one side it is contended that it should be filed with the provisional clerk of the new County of Platte, and on the other hand that it should be filed with the county clerk of Laramie. County, the county from which Platte County is taken. If no other question than this was to be considered it might easily be disposed of, after having determined as above that the election is to be held in the new county in the same man-

ner as in an organized county, except as to the canvass of
the votes.    But it is said that this would also require the
nomination paper of a candidate for either branch of the
legislature as a representative from Laramie County to be
filed with the provisional clerk in the new county, which
would make the primary law inoperative in that particular
for the reason that there is no provision of law for a final
canvass by a single board of the votes cast at the primary
election in two or more voting counties for legislative can-
didates.    And, further, that a similar difficulty would occur
if such papers should be filed only in the office of the clerk
of the original county, and the election should be conducted
in the new county by its organization officers, since there is
then no provision for getting the names of the legislative
candidates upon the primary ballot in the new county or
counties.    It is considered, therefore, that the question
relating to legislative candidates for nomination is directly
involved in any construction of the primary law for the pur-
pose of determining the place for filing the relator's nomin-
ation paper.    And we are urged to remove the doubt that
has arisen concerning the nomination at the primary election
of candidates for the legislature.    We are of the opinion
that there is reasonable ground for doubt in relation to that
matter until it is settled by this court, and that the question
must come here for determination sooner or later, if it is
not here now, and that it would not be improper for us to
express our views concerning it, even if its determination is
not imperative for the purpose of disposing of the particular
question before us.

The primary law provides generally that the candidates
of political parties for all offices which, under the general
law, are filled by the direct vote of the people at the general
election in November, and candidates for the office of
United States senator, shall be nominated, and party com-
mitteemen shall be elected at primary elections at the times
and in the manner therein provided; and that no names of
candidates of any political party required or permitted under

the act to make nominations shall be placed upon the official election ballot unless such candidates shall have been chosen and nominated in accordance with the act. (Laws 1911, Ch. 23, sec. 1.) Such primary election "shall consist of an election by all political parties, at the same time and place in the various voting precincts designated as provided by the general election laws of the state, on the first Tuesday after the third Monday in August in every year in which occurs a general election, for the nomination of candidates for such offices as are to be filled at the general election in November next ensuing, and for the election of party committeemen." (Sec. 2.)

Can it be doubted that by the general election laws, including the general law construed as aforesaid relating to the general election in November·in the new unorganized counties above mentioned, the various voting precincts in such new counties are required to be designated by the organization commissioners? That is an act preparatory to, respecting and incident to the general election, and the duty of county commissioners in respect thereto is imposed·upon the officers appointed to organize the county. In those precincts so designated the primary election is to be held, as well as in voting precincts as designated by county commissioners in organized counties.

Coming to section 8, above quoted, which prescribes where nomination papers shall be filed, we observe that those for state officers are required to be filed with the secretary of state, and those for offices to be voted for wholly within one county, and for officers not otherwise provided for, in the office of the county clerk of the proper county. What officers are to be regarded, within the meaning of this section, as those to be voted for wholly within one county? Unquestionably county and precinct officers are such officers. A party committeeman is such an officer, for the committeemen to be elected at the primary are to become the members of the county committee, composed of at least one committeeman from each election precinct. (Sec. 36.) But in

what sense is the word "county" employed in the provision
referred to? As the legislature must have had in mind,
considering the purpose of the act, the ballot to be prepared
for the primary election, and were providing a method of
nominations to enable the names of candidates therefor to
be placed upon the ballot, the provision is to be reasonably
held, we think, to refer to a separate sub-division in which
as a county the election will be held, that is to say, a county,
whether organized or not, if in process of organization,
which acts as a county for the purposes of the general elec-
tion. The new county is declared by the general law to be
segregated from the original county for the purpose of such
election. Though unorganized and not a county for the
time being for any other purpose for which counties are
organized, it is to be regarded as a county for election pur-
poses, or, more accurately, perhaps, the territory embraced
within it has been set apart by law and endowed through its
organization commissioners and clerk with all the powers of
a county for the purpose of providing for, holding and con-
ducting the election, and as an "unorganized county" it is
mentioned in the statute declaring it to be segregated from
the original county or counties for the purpose of the elec-
tion. There is nothing forced or illogical, therefore, in a
construction that will bring such new county within the
meaning of the word "county" as found in the section under
consideration. And this is especially true in view of the
provision of the primary law which declares that it shall be
liberally construed, so as to insure full opportunity to become
candidates and for voters to express their choice. (Sec.
50.) There is a further and very good reason leading to
such construction when the election of party committeemen
is considered. At the ensuing primary election party com-
mitteemen are to be *elected* who will constitute the county
committee for the term of two years from the date of their
first meeting; that meeting being required to be held within
five days, if possible, after the candidates of the respective
political parties shall have been declared nominated by the

proper canvassing board.   With the election of the new
county officers in November, and their qualification in Janu-
ary next, the county will become fully organized, and upon
the county committee therein to be elected may devolve
thereafter important duties under the primary law.   Such
committee moreover is required to elect a member of the
state committee of its party, and is authorized to fill vacan-
cies occurring among the candidates of its party nominated
within the territory over which it has jurisdiction by the
primary elections.   (Sec. 37.)   In view of the election of
county officers to occur in the new county, and the nomina-
tion of candidates therefor at the primary election, the
county committee of the new county elected at such primary
will thereafter be vested with the authority conferred upon
county committees, for the scheme of the act, in this par-
ticular, is plainly that there shall be a county committee in
each county where county officers are to be elected, the
members of which shall themselves be elected in the manner
provided therein.

Construing the word "county" as employed in section 8
to mean a county, whether organized or unorganized, where-
in an election is to be held in November for county and
precinct officers of that particular county, it would follow
that the nomination paper of the relator is required to be
filed with the clerk appointed by the organization commis-
sioners of the new County of Platte, unless there are other
provisions of the act preventing that conclusion.   In this
connection our attention is called to section 28 of the act,
which provides that the county board of canvassers shall
consist of the county clerk and two justices of the peace
of the county, called in by the clerk, which justices shall be
of different political parties, if possible, and requiring the
canvass of the returns of the primary election to be can-
vassed by that board.   And it is argued that as there are
no justices of the peace of Platte County, no way is pro-
vided by the act for canvassing the returns of the primary
election if the election is conducted in the new county sep-

arate and apart from the original county.  As to the gen-- eral election that is the very difficulty intended to be pro- vided for by declaring that the organization commissioners. shall constitute the canvassing board.  It 'may be conceded' that section 28 refers only to organized counties, and that' upon a strict and technical construction this might affect the construction of the entire act.  But it is possible that a county may be mentioned or referred to in one section in the sense of a county fully organized, and in another in a. broader sense, including an unorganized as well as an or-- ganized county.  That construction should be given to a particular section, not abortive of the purpose of the act,. or conflicting with other provisions, which would,be proper' or required if it stood alone to enable it to operate as in- tended, if such a construction be possible.  It is clear that section 28, so far as it declares who shall constitute the- county canvassing board, cannot apply to an unorganized' county.  There then appears to be no provision in the act itself for the canvass of the returns of the primary election in such a county.  But the act was clearly intended to apply' throughout the state, and in every county wherein the elec- tion in November is required to be held.  To guard against' possible omissions in the act it is provided in section 17,. that "except as herein otherwise provided, all primary elec- tions shall be conducted as required for general elections' under the general election laws, as far as the provisions. thereof may be applicable."  The word "conducted" is here used, we think, as inclusive of everything necessary to the holding of the election, which involves not only the casting of the votes of the elector, and preliminary provision therefor, but also the canvass of the returns and declaration· of the result, for otherwise the election would be unavailing. (Blake v. Walker, 23 S. C. 517; Brass v. State, 45 Fla. 1, 34 So. 307.)  The act might have declared that the returns, should be canvassed by the canvassing board provided for by the general election laws.  It has done so in effect as to· organized counties, for in such counties the county clerk

and two justices of the peace constitute the canvassing board at general elections, so that no change is made in this respect in the case of primary elections. But in the case of an un- organized county the other general statute intervenes which declares that the commissioners appointed to organize the county shall be the county canvassing board. This is a part of the general election law, for it applies to a general election held in an unorganized county at which its officers are to be elected. The provision of section 28 designating the mem- bers of the county canvassing board clearly refers only to a county which has justices of the peace. It does not provide for the canvass in an unorganized county in which the gen- eral election is to be held for the purposes aforesaid. Section 17 therefore controls the matter, whereby the general laws become applicable; and it follows that the duties of the county canvassing board prescribed in section 28 of the primary law will devolve upon the organization commis- sioners in the new county.

These conclusions will not interfere with the nomination at the primary election of candidates for the legislature, nor with the proper operation of any other provision of the primary law, so far as we have been able to discover. The argument that a construction of the statute vesting authority in the new counties, respectively, to conduct the primary election therein will prevent the nominating thereat of legis- lative candidates is based upon the theory that the nomina- tion papers of such candidates are required to be filed with the county clerk, and that, since the new county remains at- tached to the parent county for legislative representation, it is necessary to file such papers with the clerk of the parent county. But that theory is, we think, erroneous. It is true that by the general election law the certificates nominating members of either branch of the legislature were required expressly to be filed with the "clerks of the respective coun- ties" wherein they are to be elected. This entitled such candidates to have their names placed upon the official bal- lot for the general election, and, without the provision as to

joint representatives, might perhaps be held to authorize the filing of such certificates with the clerk of each voting county, that is to say, each county separately conducting an election, but with the provision for filing the certificates nominating a joint member in the office of the clerk of each county to be so represented, which remains in the statute, notwithstanding its omission from the subsequent revision and compilation, that matter is made very clear. For the new county, even after its organization as a county, until a new apportionment, will remain attached to the old county for representation in the legislature, and the new and old counties will, therefore, be jointly represented during that time.

In no section of the primary law are members of the legislature specifically mentioned. To ascertain where nominating papers for candidates for the legislature to be voted for at the primary election are to be filed, we must examine the provisions of section 8, and determine what clause or description or officers therein contained includes such candidates. Having construed that part of the section requiring the filing of a nominating paper with the county clerk where the office is one to be voted for wholly within one county, as referring to a county for election purposes, it necessarily follows that the office of senator or representative is not one necessarily to be voted for wholly within one county. Nor is it an office not otherwise therein provided for, for in the first part of the section nomination papers for state officers are required to be filed in the office of the secretary of state; and members of the legislature are, in a strict legal sense, state officers. They are clearly not county or precinct officers. They are members of a body which constitutes a separate and distinct department of the state government. They are paid by the state. They receive, respectively, their certificates of election, after the general election, from the secretary of state. They perform duties, and exercise powers, relating to the state at large. "In general, it may be said that a state officer is one whose duties and powers

are co-extensive with the state, while a county officer is one whose duties and powers are co-extensive with the county." (People v. Evans, 247 Ill. 547, 93 N. E. 388.) "State officers are those whose duties concern the state at large, or the general public, although exercised within definite limits, and to whom are delegated the exercise of a portion of the sovereign power of the state. They are in a general sense those whose duties and powers are co-extensive with the state, or are not limited to any political sub-division of the state, and are thus distinguished from municipal officers strictly, whose functions relate exclusively to the particular municipality, and from county, city, town, and school district officers." (36 Cyc., 852-853.) In Morril v. Haines, 2 N. H. 246, it was held that within the meaning of a statute providing the method of balloting for state officers a representative in the state legislature was a state officer. Though members of the legislature are thus held to be state officers within the meaning of section 8, they are to be regarded, within the meaning of section 7 regulating the number of signers to a nominating petition, as officers to be voted for within a district, which may consist of one county or more.

In the absence, therefore, of any specific provision controlling their nomination we think it clear that the nomination paper of a candidate for the office of state senator or representative in the state legislature to be voted for at the primary election must be filed in the manner required in the case of state officers, that is, with the secretary of state. So construing the statute it is rendered uniformly operative and free from any difficulty as to senators and representatives for it is made the duty of the secretary of state to transmit to each county clerk at least twenty-five days before the primary election a certified list containing the name and post office address of each person for whom a nomination paper has been filed in his office, in accordance with the provisions of the act and entitled to be voted for at such primary election by the voters of such county, together with the designation of the office for which he is a candidate, and the party

from which he seeks a nomination. And it is made the duty of the county canvassing board to certify and file the abstracts made by such board in the office of the county clerk; and to make a separate abstract of the canvass as to all state officers, United States senator, representative in Congress, and judges of the supreme and district courts, and certify the same and forthwith forward it to the secretary of state.

Upon the abstracts received from the several counties by the secretary of state, the secretary, auditor and treasurer of the state are required to meet as a canvassing board, make an abstract of its canvass in a manner prescribed by the act, and when the canvass is concluded, to deliver the original abstract returns to the secretary of state to be filed and recorded in his office, and thereupon within a time specified the secretary of state is required to certify to the clerk of each county, under separate cover party headings the name of each person nominated as shown by the official canvass made by the said canvassing board, as well as those certified to him by the proper persons when any person has been nominated by a convention or party committee, his place of residence, the office for which he was nominated and the order in which the tickets of the several political parties shall appear on the official ballot. Remembering that the clerk appointed by the organization commissioners in a new county is for all the purposes of the election the county clerk of such county, such certificate and all other certificates pertaining to the matter required to be transmitted by the secretary of state to the county clerk will be transmitted to the proper clerk in the new counties, whereupon the official primary election ballot can be prepared at the proper time and in the manner required by the primary election law, and the official ballot for the election can likewise be prepared in each new county conducting the election as well as in organized counties. In the case of a new county, like Hot Springs and Campbell counties, wherein a part of its territory votes with one of the old counties for members of the legislature, and a part with another county, the names of

the candidates for the legislature to represent each of such old counties, whose nomination papers have been filed with the secretary of state will be transmitted to the clerk of such new county, as well as after the canvass of the abstracts of the primary election the names of, and other required information concerning the candidates nominated at such election. And, since it will be the duty of the organization commissioners in such counties to arrange the voting precincts so as to enable the electors to properly vote at the primary and also at the general election for candidates for the legislature, the clerk can have no difficulty in properly preparing and distributing the ballots containing the names of such candidates to be voted for in the several precincts; any more than in the case of precinct officers.

A question arises under section 35 of the primary law affecting the relation between the old and new counties respecting the primary election in one particular. That section provides for the filling of vacancies occurring or existing in any office or position for which nominations are made under the act before the printing of the primary election ballots, and confers authority to fill such vacancy upon the regularly constituted committee of the party to which the vacancy belongs. It seems clear that if a vacancy so authorized to be filled occurs in the office of senator or representative in the legislature the proper committee to exercise the power granted by the section will be the county committee of the old county, for that is the only committee recognized by the primary law (Sec. 38) until the primary election shall have been held. And it seems also that such committee will be the only one, if any, authorized to fill vacancies covered by the section in any office which is to be voted for in the new county alone, for section 38 declares that the various political committees "now in existence" are recognized, and that they and their officers shall exercise the powers and perform the duties "herein prescribed," until committeemen are chosen in accordance "with the provisions of this act." There may be difficulty, perhaps insurmountable in the case

of a new county taken from two or more counties, in acting under section 35 as to an office to be voted for only in the new county. But that need not interfere with the operation of the law in other respects. For another provision of the act (sec. 37) authorizes the proper committee, after the primary election, to make nominations to fill vacancies occurring among the candidates nominated within the territory over which it has jurisdiction, by the primary nominating election; and a county committee will presumably be elected in the new county at such primary election. And the act also permits the nomination of candidates by petition to be voted for at the general election (sec. 46), so that there may be candidates at the general election for all county and precinct offices in the new county, even if there should occur a failure to nominate any or the allowed number at the primary election. The manner of the operation of section 35 is not directly before us at this time, and while we do not perceive that any except the committee of the old county can act under it for the ensuing primary election, we do not care to decisively so hold as to county and precinct officers of the new county. But as to the office of senator or representative in the legislature the power of the committee of the old county is, we think, plain, for the new county remains attached to the old county for legislative representation, and the vacancy nominations as to such an office can easily be so made as to be placed upon the primary election ballot.

The primary law expressly permits, as above stated, the nominating of candidates, as provided in the general election law, by petition, and provides also that any political organization which at the last preceding general election cast less than ten (10) per cent of the total votes cast for representation in Congress, may nominate candidates in the manner provided by existing laws for conventions, provided, that all such conventions shall be held on the same days as the primary election provided for in the act. Such petitions and conventions will, of course, be governed by existing laws

therefor other than the primary law, except as stated in that law, and certificates nominating candidates for the legislature in that manner will necessarily be filed as required by such other existing laws.

All the questions suggested have thus been considered. The nominating papers of the relator should be filed with the clerk appointed by the organization commissioners in the new County of Platte. The judgment of the District Court will, therefore, be reversed, and the cause will be remanded with directions to enter judgment denying the writ of mandamus prayed for, and dismissing the petition.

BEARD, C. J., and SCOTT, J., concur.